IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **Emmanuel Kromah; FortManny Consulting, LLC**<br>　　Plaintiff,<br><br>　　v.<br><br>**Harrah's NC Casino Company, LLC; Ceoc, LLC; The Sequoyah Fund, Inc,**<br>　　Defendants. | CIVIL ACTION NO. __1:25-cv-198__ |

## COMPLAINT AND JURY DEMAND

Plaintiff Emmanuel Kromah and Plaintiff FortManny Consulting, LLC in support of their Complaint against Defendant Harrah's NC Casino Company, Defendant Ceoc, LLC, and Defendant The Sequoyah Fund, Inc., hereby states the following:

## NATURE OF THE ACTION

1. This Defamation, Tortious Interference with Business Contracts, and Violation of Chapter 75 for Unfair and Deceptive Trade Practice action arises from an incident that occurred on June 30, 2024, when Defendant Harrah's NC Casino Company, LLC (hereinafter "Harrah's"), Defendant Ceoc, LLC (hereinafter "Caesars"), and Defendant The Sequoyah Fund, Inc. (hereinafter "The Fund"), collectively hereinafter "Defendants," refused to provided Plaintiff Emmanuel Kromah (hereinafter "Mr. Kromah") and thus Plaintiff FortManny Consulting, LLC (hereinafter "FortManny"), collectively hereinafter "Plaintiffs," their rightful owed monies and further defamed Mr. Kromah by the actions they took against Mr. Kromah and FortManny in the public setting that is Harrah's.

# PARTIES

2. Mr. Kromah is a citizen and resident of Sunny Isles Beach, Miami-Dade County, Florida.

3. Mr. Kromah is a private citizen.

4. FortManny is a limited liability company registered in the state of Florida with the physical address of 200 Riverside Ave, Jacksonville, Florida 32202.

5. Mr. Kromah and FortManny are informed, believe, and therefore alleges that Harrah's NC Casino Company is a Limited Liability Company licensed to do business in the state of North Carolina and is located and does business at 777 Casino Drive, Cherokee, North Carolina 28719 and was at all times responsible for managing Harrah's Cherokee Casino Resort located at 777 Casino Drive, Cherokee, North Carolina 28719.

6. Mr. Kromah and FortManny are informed, believe, and therefore alleges that Ceoc, LLC is a Limited Liability Company licensed to do business in the state of North Carolina and is located and does business at 777 Casino Drive, Cherokee, North Carolina 28719 and was at all times responsible for managing Harrah's Cherokee Casino Resort located at 777 Casino Drive, Cherokee, North Carolina 28719.

7. Mr. Kromah and FortManny are informed, believe, and therefore alleges that The Sequoyah Fund, Inc. is a Non-Profit Corporation licensed to do business in the state of North Carolina and is located and does business at 777 Casino Drive, Cherokee, North Carolina 28719 and was at all times responsible for owning Harrah's Cherokee Casino Resort located at 777 Casino Drive, Cherokee, North Carolina 28719.

8. Mr. Kromah and FortManny are informed, believe, and therefore alleges that all employees identified herein names known and unknown were employees and agents of defendants, and therefore the principles of vicarious liability and respondeat superior

apply to all of their actions making defendants named herein responsible for their actions, words and deeds as alleged.

## JURISDICTION AND VENUE

9. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 for diversity of citizenship as the parties to this action are citizens of different States.

10. The amount in controversy exceeds $75,000.00.

## STATEMENT OF FACTS

11. Mr. Kromah owns and operates a sports marketing and consulting agency, FortManny Consulting, LLC.

12. In February 2024, Mr. Kromah placed a bet with Harrah's Cherokee Casino Resort located at 777 Casino Drive, Cherokee, North Carolina 28719 by using the Caesars Sportsbooks program.

13. Mr. Kromah's bet was for the Boston Celtics to win the 2024 NBA Championship.

14. On June 14, 2024, the Celtics won the 2024 NBA Championship leaving Mr. Kromah with a winning ticket cash out of $500,500.00.

15. Mr. Kromah called Harrah's Cherokee Casino Resort and left multiple voicemails for Mr. Jeremy Bell (hereinafter "Mr. Bell") in an effort to confirm a date in which he could collect his winnings.

16. Mr. Bell left a voicemail for Mr. Kromah confirming that he had received confirmation from Rob, the Sportsbook Manager, that Mr. Kromah could collect his winnings at the end of the NBA Finals.

    a. *"..the ticket will be granted at the conclusion of the NBA Finals, sometime around June 23rd...."*

17. On or about June 19, 2024, Harrah's Cherokee Casino Resort Instagram page, Ceasars Sport Instagram page, and Harrah's Cherokee Casino Resort Facebook page posted a photo of Mr. Kromah's winning ticket and advertised that the bet was placed with Harrah's Cherokee Casino Resort.

    a. *"A bettor at @harrahscherokee won $357K last night on the Celtics"*

18. On June 30, 2024, Mr. Kromah and Nathanial Johnson (hereinafter "Mr. Johnson") arrived at Harrah's Cherokee Casino Resort to collect Mr. Kromah's winnings.

19. Upon speaking with the employee(s) at the front desk and waiting for approximately thirty (30) minutes for an answer, Mr. Kromah was rudely informed that he would not be collecting his winnings.

20. Mr. Kromah inquired as to why he could not collect his winnings when he had received confirmation from Mr. Bell that his winnings would be ready for collection after June 23rd.

21. No employee could provide an answer.

22. Mr. Kromah requested that Mr. Bell, who was not working on June 30, 2024, be contacted to help resolve the matter.

23. Employees denied Mr. Kromah's request to contact Mr. Bell.

24. Mr. Kromah was met with rudeness, discrimination, and accusations of being a fraud and criminal from the employees when he attempted to obtain answers for why he was not able to collect his rightly owed monies.

25. Two employees, Michelle and Nick, requested that security escort Mr. Kromah out of the facility.

26. Additionally, Michelle and Nick called the police who met Mr. Kromah, Mr. Johnson, Michelle, and Nick outside.

27. Mr. Johnson filmed Mr. Kromah being escorted out of the building.

28. The video was uploaded online on Instagram and YouTube on July 30, 2024, and it showed Defendants' employees "perp" walking Mr. Kromah out the front door to the police as if he was a criminal.

29. Mr. Kromah is an African-American and based upon the circumstances Defendants' employees made it appear as if Mr. Kromah was a criminal being arrested.

30. The video received millions of views online.

31. Many of the statements were supportive of Mr. Kromah, but numerous accused him of criminal behavior or otherwise violating gambling laws due to the actions of the defendants' employees.

32. On July 10, 2024, Defendants paid the bet out to Mr. Kromah.

33. In an effort to cover their actions, on July 16, 2024, Caesars sent Mr. Kromah a letter formally prohibiting Mr. Kromah from gaming or conducting further business with any Caesars owned or operated properties.

    a. *"This letter is to inform you that, based on regulatory considerations, a decision has been made by the management of Caesars Entertainment Corporation ("Caesars") that you many not conduct further gaming or other business with any Caesars owned or operated property in the United States or Abroad (collectively, the "Caesars Affiliates").*

**COUNT ONE – DEFAMATON FOR PREJUDICE AND INSINUATING ACTIONS MADE ON JUNE 30, 2024**

34. Plaintiffs repeats and re-alleges each of the foregoing paragraphs as set forth fully herein.

35. Defendants' employees made defamatory actions and insinuations towards Mr. Kromah on June 30, 2024, when he arrived to pick up his rightful owed and confirmed monies when they wrongfully and publicly insinuated by their actions that his winning ticket must be fraudulent.

36. Defendants' employees' defamatory actions were caught on camera when the situation began to turn negative when Mr. Kromah simply asked for an answer as to why he could not collect his winnings, and the employees started to act secretive and prejudicial. The video was posted online to expose Defendants and the actions they allow within their facility.

37. The video is still fully assessable and is available to a worldwide audience.

38. Additionally, Defendant pushed the narrative that Mr. Kromah was acting in a criminal manner when they requested the presence of police officers.

39. These accusations are of and concerning Mr. Kromah as he is blatantly apart of the situation that was escalated by Defendants' employees. Those who know Mr. Kromah and/or saw the video knew the type of insinuations that Defendants were making about Mr. Kromah.

40. These actions by Defendants which allude that Mr. Kromah acted in criminal and/or immoral acts are false:

    a. Mr. Kromah is not a criminal, nor did he act in any criminal manner while at Harrah's Cherokee Casino Resort to allude to Defendants' employees' that they could make a fair assumption of such.

    b. Mr. Kromah was calm during the situation and only showed frustration, never violence or anger, after being treated like a criminal.

41. The substantial injury to Plaintiffs reputation from Defendants' false actions is readily apparent. Such statements would tend to harm the reputation of another as to lower the individual's reputation within a community and/or to deter third persons from associating or dealing with the individual.

42. By making such actions and insinuations to third parties, Defendants have harmed Plaintiffs' reputation.

43. At the time of making the evident accusations, Defendants knew, or should have known, their actions were false and unjust.

44. Defendants' actions are defamatory per se as they insinuate that Mr. Kromah committed a crime involving moral turpitude for which Mr. Kromah, if the charges were true, could be indicted and punished. Additionally, Defendants' false and defamatory actions and insinuations have prejudiced Plaintiffs' reputation within the sports betting community, entitling Plaintiffs' to presumed damages.

45. As a direct and proximate result of these false and defamatory actions and insinuations by Defendants, Plaintiffs have suffered damages, including, inter alia, injury to their reputation, harm to their ability to carry on their profession, embarrassment, humiliation, and emotional distress, and economic loss in an amount to be determined at trial.

46. Defendants' actions were malicious, willful, wanton, and evidence of conscious disregard for Plaintiffs' rights. Plaintiffs are entitled to punitive damages.

**COUNT TWO – TORTIOUS INTERFERENCE WITH BUSINESS CONTRACTS**

47. Plaintiffs repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

48. Defendants knew of Plaintiffs and that they are still active in the sports betting business.

49. Defendants intentionally wrote/or caused to be published to third person by the false and defamatory actions and insinuations referenced herein about Mr. Kromah resulting in interference with the potential revenue from Mr. Kromah's business, FortManny.

50. Upon making the false, defaming, and insinuation actions against Mr. Kromah, Defendants' employees knew, or should have known, that they were inappropriate and unjust. Defendants knew at the time of becoming aware of their employees' actions that it contained false and damaging information regarding Mr. Kromah.

51. Further, Defendants knew that these actions and insinuations alleged that Mr. Kromah had acted criminally and/or immorally.

52. Defendants intentionally set forth to allow the defamatory actions and insinuations alleged herein for their own personal satisfaction against Mr. Kromah.

53. Defendants' actions were conducted out of personal ill will and hospitality towards Mr. Kromah.

54. Defendants have acted in actual and legal malice and without legal justification. Defendants have interfered with Mr. Kromah's business and his future in sports betting.

55. Defendants' actions were malicious, willful, wanton, and evidence of conscious disregard for Mr. Kromah's rights. Mr. Kromah is entitled to punitive damages.

56. The facts alleged above constitute tortious interference with contractual rights against Mr. Kromah. Mr. Kromah has suffered special damages, including pecuniary loss as a proximate result of Defendants' interference with his business contracts. Mr. Kromah has sustained harm, including damages in an amount to be determined at trial.

## COUNT THREE – VIOLATION OF CHAPTER 75 FOR UNFAIR AND DECEPTIVE TRADE PRACTICE

57. Plaintiffs repeats and re-alleges each of the foregoing paragraphs as set forth fully herein.

58. Defendants violated Chapter 75 for Unfair and Deceptive Trade Practice when Mr. Kromah was not allowed to collect his rightfully owed winnings on June 30, 2024, when he was immorally and unethically judged as a result of his race and appearance.

59. Defendants' employees aggravated the situation by requesting the presence of police officers when Mr. Kromah had acted in no manner that would require the presence of a police officer, yet Defendants' employees felt the need to request them.

60. After civilly leaving Harrah's Cherokee Casino Resort, it was not until Mr. Kromah made the effort to contact Harrah's Cherokee Casino Resort regarding the issue and how to rightfully claim his winnings that Mr. Kromah was paid.

61. Defendants' actions were malicious, willful, wanton, and evidence of conscious disregard for Mr. Kromah's rights. Mr. Kromah is entitled to treble damages.

62. The facts alleged above constitute a violation of Chapter 75 for Unfair and Deceptive Trade Practices against Mr. Kromah. Mr. Kromah has suffered special damages, including pecuniary loss as a proximate result of Defendants' interference with his business contracts.

63. Mr. Kromah has sustained harm, including damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays the court for the following relief from Defendants:

1. Award Plaintiffs actual and compensatory damages in an amount in excess of $75,000.00 for Defamation;

2. Award Plaintiffs actual and compensatory damages in an amount in excess of $75,000.00 for Tortious Interference with Business Contracts;

3. Award Plaintiffs actual and compensatory damages in an amount in excess of $75,000.00 for Violation of Chapter 75 for Unfair and Deceptive Trade Practice;

4. Award Plaintiffs punitive damages in excess of $75,000.00;

5. Allow a jury trial on all issues so triable;

6. Tax the costs of this action, including attorney's fees to the extent allowed by law, to Defendant; and

7. Grant unto Plaintiffs such other and further relief as the Court may deem just and proper.

This the 30th day of June 2025.

**RANCHOR HARRIS LAW, PLLC**

**/s/ S. Ranchor Harris, III**
S. Ranchor Harris
N.C. Bar No. 21022
Ranchor Harris Law, PLLC
1784 Heritage Center Drive
Suite 204-E
Wake Forest, NC 27587
919-249-5006 (Direct Line)
919-589-4845 (Facsimile)
ranchorharris.com
ranchor@ranchorharris.com